CV13-0120

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALBERT RUDGAYZER, MICHAEL AMALFITANO, and LILLIAN GANCI, Individually and on Behalf of All Others Similarly Situated,

                                   *Plaintiffs,*

-against-

GOOGLE INC.,

                                   *Defendant.*

**CLASS-ACTION COMPLAINT**

## INTRODUCTION

1.      Plaintiffs, Albert Rudgayzer ("Rudgayzer"), Michael Amalfitano ("Amalfitano"), and Lillian Ganci ("Ganci"), bring this action against Google Inc. ("Google") based upon Google's actions through its Google Buzz program ("Google Buzz" or "Buzz"). This action is brought by Plaintiffs individually and on behalf of the following subclasses:

> (1) Plaintiff Rudgayzer and the First Subclass: persons whose requests to opt out of the settlement of *In re Google Buzz User Privacy Litigation*, 5:10-CV-00672-JW (N.D. Calif.) ("Google Buzz Settlement") have been accepted;

> (2) Plaintiff Amalfitano and the Second Subclass: persons who, in seeking to opt out of the settlement agreement in *In re Google Buzz User Privacy Litigation*, 5:10-CV-00672-JW (N.D. Calif.) ("Google Buzz Settlement Agreement"), followed one or the other requirement from each set of those requirements that were inconsistent as between the Google Buzz Settlement Agreement and the class notice in that case ("Google Buzz Class Notice"); and

> (3) Plaintiff Ganci and the Third Subclass: persons who would have opted out of the Google Buzz Settlement had they known that the requirements that were contained in the Google Buzz Settlement Agreement were inconsistent with the requirements that were contained in the Google Buzz Class Notice such that they would have chosen, with respect to each set of inconsistent requirements, which

of those inconsistent requirements to follow.

2.      Plaintiffs' claims arise under the Stored Communications Act, 18 U.S.C. §§ 2701-2712 ("SCA") (Title II of the Electronic Communications Privacy Act, Pub.L. No. 99-508, 100 Stat. 1848). Plaintiffs, individually and on behalf of the other Members of the Class, seek monetary damages, injunctive relief, legal fees, and costs and disbursements.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction under 28 U.S.C. § 1331.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

5.      Plaintiff Rudgayzer is a resident of this District.

6.      Plaintiff Amalfitano is a resident of this District.

7.      Plaintiff Ganci is a resident of Florida.

8.      Google is a Delaware corporation whose principal executive office is at 1600 Amphitheatre Parkway, Mountain View, California 94043.

## FACTS PERTAINING TO EACH PLAINTIFF

9.      Google is a technology company best known for its web search engine, which provides free search results to users. Google also provides various free web products to the public, including its widely used web-based email service, Gmail, which has been available since April 2004. Among other things, Gmail allows people to send and receive emails, chat with other users through Google's instant-messaging service called Google Chat, and store email messages, contact lists, and other information on Google's servers.

10.     Google's free web products also include: Google Reader, which allows users to subscribe to, read, and share content online; Picasa, which allows users to edit, post, and share digital

photos; and Blogger, Google's weblog publishing tool that allows users to share text, photos, and video.

11.     Google also offers people the ability to create a "Google profile," which enables them to make certain information about themselves public and to link to their content on Google product websites, such as the user's Google Reader shared items, public Picasa Web Albums, and Blogger blog. Information on a person's public Google profile, which might include the person's name, location, and photo, was available on the Internet and can be indexed by search engines.

12.     Beginning on February 9, 2010, on which date Google Buzz was launched, Gmail users who signed into their Gmail accounts were taken to a screen that announced Google Buzz and highlighted features such as: "No set up needed – You're already following the people you email and chat with the most in Gmail." That screen required Gmail users to select one of two options: "Sweet! Check out Buzz" or "Nah, go to my inbox." Exhibit "A" shows how the initial Buzz screen appeared. However, Gmail users who selected "go to my inbox" were not only "already following the people you email and chat with the most in Gmail," but also had that information and other information made publicly available. Google did not disclose that, by default, those lists might later be posted on a user's public Google profile, exposing the list of people with whom a user chatted or emailed most often. *See* Exhibit "B."

13.     In addition to publicizing lists of followers, Google Buzz searched for and acquired pictures, video, text, and other data that users had posted to websites such as Picasa and YouTube. Buzz automatically sent those posts to the email accounts of the users' frequent-email contacts without the users' knowledge or authorization.

14.     Regardless of whether a Gmail user chose "Sweet! Check out Buzz" or "Nah, go to my inbox," Gmail users had an option to click a "Turn off Buzz" link, contained in small type at the

bottom of the Gmail home page after login. Clicking that link removed the Buzz tab from the user's Gmail page. However, Gmail users who had clicked "Sweet! Check out Buzz" or had clicked on the Buzz link in Gmail, then later clicked the "Turn off Buzz" link, continued to appear as a "follower" on the Google profiles and Google Buzz pages of the people whom they emailed the most. In addition, on each such profile, a "follow" link was placed next to the Gmail user's name, so other individuals could begin following the user.

15.     Google has disseminated, or caused to be disseminated, statements to people on its website regarding its privacy practices, including but not limited to:

a. From approximately October 2004 until October 2010, the following statement in the Gmail Privacy Policy about Google's use of personal information provided through Gmail: "Gmail stores, processes and maintains your messages, contact lists and other data related to your account in order to provide the service to you."

b. From approximately October 2005 until October 2010, the following statement in Google's Privacy Policy regarding people's choices about the uses of their personal information in all of Google's products, including Gmail: "When you sign up for a particular service that requires registration, we ask you to provide personal information. If we use this information in a manner different than the purpose for which it was collected, then we will ask for your consent prior to such use."

16.     When first attempting to post in Buzz, Gmail users were directed to click through a profile-creation screen, which explained that a user needed to create a public Google profile before participating in Buzz. The profile-creation screen contained the following header: "How do you want to appear to others?" The screen also included the following language in prominent, contrasting type: "Before participating in Buzz, you need a public profile with your name and photo. It's visible on

the web so friends can find and recognize you. You can post publicly to the world or privately to only the people you choose." The profile-creation screen also included the following language in small gray letters against a white background: "Your profile will include your name, photo, people you follow and people who follow you." Exhibit "C" shows how the profile-creation screen appeared to people.

17.    In order to find controls that would allow the user to stop following certain individuals, a user had to take the additional step to click a link marked "edit," which expanded the profile-creation screen. Only after clicking "edit" could users choose not to have their lists of followers and people the user was following shown on the user's public Google profile. They did so by unchecking a pre-checked box. Users who saw no reason to edit their profile, particularly those who already had created a Google profile and did not realize that new information would be added and publicly available by default on that profile, would never have learned that these controls were available. Exhibit "D" shows how the expanded profile-creation screen appeared to people.

18.    In some cases, Gmail users had previously blocked certain email contacts from viewing other information about them, but those preferences were not carried over to Buzz. For example, even if a Gmail user had blocked an individual in Google Chat or Google Reader, that person was not blocked in Buzz and could show up as a follower of that Gmail user.

19.    Users could not block followers who did not have a public Google profile. Moreover, an individual who had not provided a first or last name when setting up a Google account would appear as an "unknown" follower to a user. The user was not only unable to block such an individual from following him, but had no way of knowing that individual's identity.

20.    When Google automatically activated Google Buzz in a user's Gmail account, Google's unilateral actions had significant privacy consequences for Gmail users who had created

a "Google Profile," including but not limited to:

> a. the contents of the profile became visible to all persons who were "following" the user. A user's Google Profile might contain information such as the user's occupation, place of residence, and contact information; and

> b. the "following" and "follower" lists of the user became visible to all persons who were "following" the user, and were made publicly available to be searched and viewed by any person on the Internet.

21. Google Buzz's privacy policy confirms that Google automatically created follower/following lists:

> When you first enter Google Buzz, to make the startup experience easier, we may automatically select people for you to follow based on the people you email and chat with most. Similarly, we may also suggest to others that they automatically follow you . . . Your name, photo, and the list of people you follow and people following you will be displayed on your Google profile, which is publicly searchable on the Web.

Google Buzz Privacy Policy, February 11, 2010, available at:

http://www.google.com/buzz/help/intl/en/privacy.html

22. Because Google automatically enrolled Gmail users into the Buzz program without those users having agreed to the terms and conditions to which the preceding paragraph refers, those users were not bound by such terms, and thus this dispute did not arise out of any terms to which Google and such users agreed. Therefore, Google's forum-selection clause, which provides that disputes "arising from [applicable] [t]erms" may be brought only in "the courts located within the county of Santa Clara, California," does not govern this action.

23. Plaintiffs each had a Gmail account at the time that Google Buzz was launched, and Plaintiffs, at and around such time, used their Gmail accounts where they resided.

## FACTS PERTAINING TO PLAINTIFFS AMALFITANO AND GANCI

24.     On October 7, 2010, the United States District Court for the Northern District of California preliminary approved the Google Buzz Settlement Agreement, and, in so doing, stated: "[t]he [Google Buzz] Settlement Agreement between Defendant and Plaintiffs is adopted by the Court and made part of this Order as if set out in full herein."

25.     The Google Buzz Settlement Agreement provided that the timeliness of opt-out requests would be determined by the date on which such requests are *postmarked*, whereas the Google Buzz Class Notice provided that such timeliness would be determined by the date on which such requests are *received*.

26.     The Google Buzz Settlement Agreement did not require one to provide his reasons for opting out of the class when making the request to opt out, whereas the Google Buzz Class Notice contained such a requirement.

27.     The Google Buzz Settlement Agreement did not require one to provide, in an opt-out requests, proof that he used Gmail at some point after February 9, 2010, whereas the Google Buzz Class Notice contained such a requirement.

28.     The Google Buzz Settlement Agreement required that opt-out requests be signed under oath, whereas the Google Buzz Class Notice required a signature but did not require that it be under oath.

## FACTS PERTAINING TO PLAINTIFF AMALFITANO

29.     Plaintiff Amalfitano, in seeking to opt out of the Google Buzz Settlement, followed one requirement from each set of requirements that were inconsistent with each other as between the Google Buzz Settlement Agreement and the Google Buzz Class Notice.

## FACTS PERTAINING TO PLAINTIFF GANCI

30.     Plaintiff Ganci would have opted out of the Google Buzz Settlement had she known that the requirements that were contained in the Google Buzz Class Notice were inconsistent with the requirements that were contained in the Google Buzz Settlement Agreement such that she would have chosen, with respect to each set of inconsistent requirements, which of those inconsistent requirements to follow.

31.     The Google Buzz Class Notice gave no indication that the Google Buzz Settlement Agreement and Google Buzz Class Notice contained inconsistent requirements. Therefore, Plaintiff Ganci, and the Members of the Third Subclass, had no reason to believe, based upon the Google Buzz Class Notice, that they could have consulted the Google Buzz Settlement Agreement to learn of those inconsistencies so as to have enabled them to follow one requirement from each set of such inconsistent requirements.

## CLASS ALLEGATIONS

32.     Plaintiff Rudgayzer brings this Complaint individually, and on behalf of a subclass of those persons, who, like Rudgayzer, submitted opt-out requests from the Google Buzz Settlement that have been accepted ("First Subclass).

33.     Upon information and belief, there are at least 500 members of the First Subclass.

34.     Plaintiff Amalfitano brings this Complaint individually, and on behalf of a subclass of persons, who, like Amalfitano, in seeking to opt out of the Google Buzz Settlement, followed one or the other requirement from each set of those requirements that were inconsistent as between the Google Buzz Settlement Agreement and the Google Buzz Class Notice, but have been deemed, as a result of such inconsistency, to have failed to opt out of the class ("Second Subclass").

35.     Upon information and belief, there are at least 10,000 members of the Second

Subclass.

36.     Plaintiff Ganci brings this Complaint individually, and on behalf of a subclass of persons who, like Ganci, would have opted out of the Google Buzz Settlement had they known that the requirements that were contained in the Google Buzz Class Notice were inconsistent with the requirements that were contained in the Google Buzz Settlement Agreement such that they would have chosen, with respect to each set of inconsistent requirements, which of those inconsistent requirements to follow ("Third Subclass").

37.     Upon information and belief, there are at least 10,000 members of the Third Subclass.

38.     The Members of the putative Class are so numerous that joinder of individual claims is impracticable.

39.     Questions of law and fact common to both the Class predominate over questions that might affect individual Class Members, including, but not limited to:

> (i) whether the Google Buzz program publicly shared user information;
>
> (ii) whether Google automatically enrolled Gmail users into the Buzz program without those users having agreed to the terms and conditions that were applicable to Google Buzz;
>
> (iii) whether, if Google automatically enrolled Gmail users into the Buzz program without those users having agreed to the terms and conditions that were applicable to Google Buzz, those users were nonetheless bound by such terms such that this dispute has arisen out of such terms and may therefore be brought only in a court located in Santa Clara County, California, under Google's general terms and conditions; and
>
> (iv) whether the Class Members are entitled to injunctive, declarative, and monetary relief as a result of Google's conduct.

40.     The question of law and fact that is common to the Second Subclass, which predominates over questions that might affect individual Members of the Second Subclass, is:

whether those persons who, in seeking to opt out of the Google Buzz Settlement, followed either one or the other requirement from each set of requirements that were inconsistent as between the Google Buzz Settlement Agreement and the Google Buzz Class Notice, are entitled to have their opt-out requests be deemed accepted.

41.     The question of law and fact that is common to the Third Subclass, which predominates over questions that might affect individual Members of the Third Subclass, is:

whether those persons who would have opted out of the Google Buzz Settlement had they known that the requirements that were contained in the Google Buzz Settlement Agreement were inconsistent with the requirements that were contained in the Google Buzz Class Notice such that they would have chosen, with respect to each set of inconsistent requirements, which of those inconsistent requirements to follow, are not bound by the Google Buzz Settlement Agreement.

42.     Plaintiffs' claims are typical of the claims of the putative Class. Plaintiffs and all members of the putative Class have been adversely affected and damaged in that Google publicly shared their private information without the Class Members' knowledge or consent.

43.     The proposed Class representatives would fairly and adequately represent the putative Classes because they have the Class Members' interest in mind, their individual claims are co-extensive with those of the Class, and they are represented by qualified counsel experienced in class-action litigation of this nature.

44.     A class action in this instance would be superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the putative Class is impracticable. Many Members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Google's actions toward an entire group of individuals. Class-action

procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economy of scale, and comprehensive supervision over the entire controversy by a single court.

     45.    The putative Class may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Google has acted on grounds generally applicable to the putative Class, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the claims raised by the Class.

     46.    The putative Class may be certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because questions of law and fact common to Class Members will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

## FIRST CAUSE OF ACTION

### [Stored Communications Act, 18 U.S.C. §§ 2701-2712 (Title II of the Electronic Communications Privacy Act, Pub.L. No. 99-508, 100 Stat. 1848)]

     47.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "46" inclusive of this Complaint as if fully set forth herein.

     48.    Defendant Google provided an electronic communications service to the public via its "Gmail" email program. 18 U.S.C. § 2510(15).

     49.    A user's contact list was an electronic communication within the meaning of 18 U.S.C. § 2510(12).

     50.    As part of its Gmail service, Google held its users' contact lists in electronic storage on its servers. 18 U.S.C. § 2510(17).

     51.    The Buzz program automatically created for each user a list of "followers" and

"persons following" the user. Buzz created the follower/following list by selecting the most frequent contacts on the user's contact list.

52.     A user's follower/following list was an electronic communication within the meaning of 18 U.S.C. § 2510(12).

53.     Google held its users' follower/following lists in electronic storage. 18 U.S.C. § 2510(17).

54.     By sharing users' follower/following lists with the users' "followers" and making follower/following lists publicly searchable on the Internet, Defendant Google knowingly divulged the contents of communications while those communications were in electronic storage in violation of 18 U.S.C. § 2702(a)(1).

55.     A Gmail user's Google Profile was created by the user and contains information that the user chose to place in his Profile, such as the user's contact information, likes and dislikes, occupation, etc.

56.     A user's Google Profile was an electronic communication within the meaning of 18 U.S.C. § 2510(12).

57.     Google held its users' Google Profiles in electronic storage. 18 U.S.C. § 2510(17).

58.     By sharing users' Google Profiles with the users' "followers" without consent from its users, Defendant Google knowingly divulged the contents of communications while those communications are in electronic storage in violation of 18 U.S.C. §2702(a)(1).

59.     Pictures, videos, and text that individuals post on public websites such as Picasa and YouTube were electronic communications with the meaning of 18 U.S.C. § 2510(12).

60.     Google held information that individuals had posted to Picasa, YouTube, and other public websites owned by Google in electronic storage. 18 U.S.C. § 2510(17).

61.     Without authorization or consent from its users, the Google Buzz program searched for and collected information that its users had posted on various public websites owned by Google, including but not limited to Picasa and YouTube. The Buzz program then sent the collected information to the user's "followers."

62.     By sharing with the users' "followers" posts that users had placed on YouTube, Picasa, and other websites, Defendant Google knowingly divulged the contents of communications while those communications are in electronic storage in violation of 18 U.S.C. §2702(a)(1).

63.     Google provided remote computing services to the public because it provides computer storage and processing services by means of an electronic communications system. 18 U.S.C. § 2711(2).

64.     Google carried and maintained its users' contact lists, follower/following lists, Google Profile information, and Picasa, YouTube, and other website posts solely for the purpose of providing storage and computer processing services to its users. Google was not authorized to access this information for purposes other than providing storage and computer processing. 18 U.S.C. § 2702(a)(2).

65.     By engaging in the foregoing acts and omissions, Google knowingly divulged the contents of communications that are carried and maintained by Google on behalf of, and received by transmission from, users of Google's Gmail service in violation of 18 U.S.C. § 2702(a)(2).

66.     By engaging in the foregoing acts and omissions, Google divulged its users' electronic communications to persons who are not the intended addressees or recipients. 18 U.S.C. § 2702(b)(1).

67.     Google engaged in the foregoing acts and omissions without obtaining the lawful consent of either the originators or the intended addressees or recipients. 18 U.S.C. § 2702(b)(3).

68.     For some Gmail users, Google activated the information-divulging features of the Buzz program if the user had not affirmatively opted out of those features. A Gmail user's failure to affirmatively opt out did not constitute consent within the meaning of 18 U.S.C. § 2702(b)(3).

69.     For some Gmail users, Google activated the information-divulging features of the Buzz program automatically, without providing the user any opportunity to opt out and without obtaining any consent or authorization of the user.

70.     None of the foregoing acts and omissions taken by Google were necessarily incident to Google's rendition of its Gmail service or to the protection of Google's rights or property. 18 U.S.C. § 2702(b)(5).

71.     Because of the foregoing violations, Plaintiffs, on behalf of the Class, are entitled to appropriate relief, including preliminary and other equitable or declaratory relief as this Court might deem appropriate. 18 U.S.C. § 2707(b)(1).

72.     Plaintiffs, on behalf of the Class, are entitled to a reasonable legal fees and other litigation costs reasonably incurred, as provided by 18 U.S.C. § 2707(b)(3).

73.     Google profited from the information-divulging aspects of the Buzz program. By inducing users to spend more time using services provided by Google, and thus viewing advertisements provided by Google for which Google charges the advertisers, Buzz increased Google's revenue.

74.     Plaintiffs, on behalf of the Class, are entitled to recover monetary damages, including actual damages, profits made by Google as described above, and statutory damages in the amount of not less than $1,000 per Class Member as provided by 18 U.S.C. § 2707(c).

75.     Because Google's violations were willful and intentional, Plaintiffs, on behalf of the Class, are entitled to recover punitive damages as provided by 18 U.S.C. § 2707(c).

## SECOND CAUSE OF ACTION

### [Declaratory Judgment for the Second Subclass]

76.     Plaintiff Amalfitano repeats and realleges each and every allegation contained in paragraphs "1" through "75" inclusive of this Complaint as if fully set forth herein.

77.     Plaintiff Amalfitano and those Class Members, who, in seeking to opt out of the Google Buzz Settlement, followed one or the other of those requirements that were inconsistent as between the Google Buzz Settlement Agreement and the Google Buzz Class Notice but have been deemed to have failed to opt out of the class, are entitled to a judgment declaring that their opt-out requests are valid.

## THIRD CAUSE OF ACTION

### [Declaratory Judgment for the Third Subclass]

78.     Plaintiff Ganci repeats and realleges each and every allegation contained in paragraphs "1" through "77" inclusive of this Complaint as if fully set forth herein.

79.     Plaintiff Ganci and those Class Members who would have opted out of the Google Buzz Settlement had they known that the requirements that were contained in the Google Buzz Class Notice were inconsistent with the requirements that were contained in the Google Buzz Settlement Agreement such that they would have chosen, with respect to each set of inconsistent requirements, which of those inconsistent requirements to follow, are entitled to a judgment declaring that they are not bound by the Google Buzz Settlement Agreement.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands a Judgment against Defendant:

(a)     Declaring, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that Plaintiff Michael Amalfitano and those other members of the class in *In re Google Buzz User Privacy Litigation*, 5:10-CV-00672-JW (N.D. Calif.), who, in seeking to opt out of the Google Buzz Settlement, followed either one or the other requirement from each set of requirements that were inconsistent as between the Google Buzz Settlement Agreement and the Google Buzz Class Notice, validly opted out of that class;

(b)     Declaring, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that Plaintiff Lillian Ganci and those other members of the class in *In re Google Buzz User Privacy Litigation*, 5:10-CV-00672-JW (N.D. Calif.), who would have opted out of the Google Buzz Settlement had they known that the requirements that were contained in the Google Buzz Class Notice were inconsistent with the requirements that were contained in the Google Buzz Settlement Agreement such that they would have chosen, with respect to each set of inconsistent requirements, which of those inconsistent requirements to follow, are not bound by the Google Buzz Settlement Agreement;

(c)     Awarding Plaintiffs and the other Members of the Subclasses monetary damages pursuant to 18 U.S.C. § 2707(c) of the Stored Communications Act, 18 U.S.C. §§ 2701-2712;

(d)     Awarding Plaintiffs and the other Members of the Subclasses punitive damages in the discretion of the Court, pursuant to 18 U.S.C. § 2707(c) of the Stored Communications Act, 18 U.S.C. §§ 2701-2712, if Defendant's violations of that Act were willful or intentional; and

(e)     Awarding Plaintiffs and the other Members of the Subclasses reasonable legal fees and other litigation costs, and such other and further relief as this Court deems just and proper.

Dated:   January 7, 2013

Yours, etc.,

TODD C. BANK
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York 11415
(718) 520-7125
(TB-6825)

*Counsel to Plaintiffs*