UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------- X

ALBERT RUDGAYZER, MICHAEL
AMALFITANO, and LILLIAN GANCI,
Individually and on Behalf of All Others
Similarly Situated,

               Plaintiffs,

   -against-

GOOGLE INC.,

             Defendant.

------------------------------------- X

:
:
:
:
:
:
:
:

INDEX NO. 1:13-cv-00120-ILG-CLP

ECF CASE

MEMORANDUM IN SUPPORT OF
DEFENDANT GOOGLE INC.'S MOTION
TO DISMISS FOR FAILURE TO STATE A
CLAIM AND LACK OF SUBJECT
MATTER JURISDICTION

PERKINS COIE LLP

    Dennis Hopkins (DH-3767)
    DHopkins@perkinscoie.com
    30 Rockefeller Plaza, 22nd Floor
    New York, New York 10112-0015
    212.262.6900

    Susan Fahringer (SF-6368)
    SFahringer@perkinscoie.com
    Rebecca Engrav (RE-0824)
    REngrav@perkinscoie.com
    1201 Third Avenue, Suite 4900
    Seattle, Washington  98101
    206.359.8000

Attorneys for Defendant
Google Inc.

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .......................................................................................................... 1

II. BACKGROUND ............................................................................................................ 1

    A.  The Parties ............................................................................................................ 1

    B.  Plaintiffs' Stored Communications Act Claims.................................................... 2

    C.  The 2010 Buzz Class Action................................................................................ 3

    D.  Declaratory Judgment Claims Asserted by Amalfitano and Ganci ...................... 6

    E.  Purported Class Definitions ................................................................................. 7

III. ARGUMENT................................................................................................................. 8

    A.  Plaintiffs' Stored Communications Act Claims Must Be Dismissed for
        Lack of Standing and Failure to State a Claim ..................................................... 8

        1.  Plaintiffs Lack Article III Standing.......................................................... 8

        2.  Plaintiffs Fail to State a Claim Under the Stored Communications
            Act as to Alleged Disclosure of Publicly Available Information ........... 10

    B.  Amalfitano and Ganci's Claims Are Barred by Res Judicata............................. 12

        1.  Legal Standard for Res Judicata ............................................................. 13

        2.  The Elements of Res Judicata Are Met for Amalfitano's and
            Ganci's Claims...................................................................................... 14

    C.  In the Alternative, the Court Lacks Subject Matter Jurisdiction over
        Amalfitano and Ganci's Claims Seeking Declaratory Judgments Because
        the Requirements for the Assertion of Federal Court Jurisdiction to Issue a
        Declaratory Judgment Are Not Met..................................................................... 16

        1.  Legal Standard for Issuance of a Declaratory Judgment ........................ 16

        2.  The Court Lacks Jurisdiction to Issue a Declaratory Judgment
            Because There Is No Underlying Legal Claim or Rights to Be
            Adjudicated ............................................................................................ 17

        3.  Even if the Court Had Power to Consider the Declaratory
            Judgment Claims, in Its Discretion It Should Decline to Do So to
            Avoid Entering an Inconsistent Judgment and Encroaching on the
            Rulings of the Northern District of California......................................... 18

IV. CONCLUSION............................................................................................................. 20

# TABLE OF AUTHORITIES

Pages(s)

CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................8

*Channer v. Dep't of Homeland Sec.*,
527 F.3d 275 (2d Cir. 2008).....................................................................................15

*Chevron Corp. v. Naranjo*,
667 F.3d 232 (2d Cir.), *cert. denied*, 133 S. Ct. 423 (2012) ......................16, 17, 18

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
126 F.3d 365 (2d Cir. 1997).....................................................................................15

*Cooper v. Fed. Reserve Bank of Richmond*,
467 U.S. 867 (1984).................................................................................................14

*Defenders of Wildlife v. Lujan*,
504 U.S. 555 (1992)...................................................................................................8

*EDP Med. Computer Sys., Inc. v. United States*,
480 F.3d 621 (2d Cir. 2007).....................................................................................13

*Esquire Trade & Fin., Inc. v. CBQ, Inc.*,
562 F.3d 516 (2d Cir. 2009).....................................................................................13

*Federated Dep't Stores, Inc. v. Moitie*,
452 U.S. 394 (1981).................................................................................................13

*Gaos v. Google*,
No. C 10-04809 JW, 2011 WL 7295480 (N.D. Cal. Apr. 7, 2011)..........................10

*Gates v. United Health Grp. Inc.*,
No. 11 Civ. 3487 (KBF), 2012 WL 2953050 (S.D.N.Y. July 16, 2012) ..................15

*Gladstone Realtors v. Village of Bell-wood*,
441 U.S. 91 (1979).....................................................................................................9

*Gonzalez v. City of New York*,
396 F. Supp. 2d 411 (S.D.N.Y. 2005)................................................................14, 15

*In re iPhone Application Litig.*,
    No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)................10

*Kiobel v. Royal Dutch Petroleum*,
    621 F.3d 111 (2d Cir. 2010)....................................................................................8

*Low v. LinkedIn Corp.*,
    __ F. Supp. 2d __, No. 11-CV-01468-LHK, 2012 WL 2873847 (N.D. Cal. July 12,
    2012) ............................................................................................................................8

*Low v. LinkedIn Corp.*,
    No. 11-CV-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011)..................9

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)....................................................................................8

*Marvel Characters, Inc. v. Simon*,
    310 F.3d 280 (2d Cir. 2002)..................................................................................14

*Maryland Cas. Co. v. Rosen*,
    445 F.2d 1012 (2d Cir. 1971)...........................................................................17, 18

*New York v. Solvent Chem. Co*,
    664 F.3d 22 (2d Cir. 2011)....................................................................................19

*Overview Books, LLC v. United States*,
    755 F. Supp. 2d 409 (E.D.N.Y. 2010), *aff'd*, 438 F. App'x 31 (2d Cir. 2011)......................12

*Pub. Affairs Assocs., Inc. v. Rickover*,
    369 U.S. 111 (1962)..............................................................................................17

*Rollock v. LaBarbera*,
    2009 WL 8732294 (S.D.N.Y. June 23, 2009), *aff'd*, 383 F. App'x 29 (2d Cir. 2010)............16

*Rudgayzer v. Yahoo!, Inc.*,
    No. 5:12-CV-01399 EJD, 2012 WL 5471149 (N.D. Cal. Nov. 9, 2012) ................10

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)................................................................................................8

*Waldman v. Vill. of Kiryas Joel*,
    207 F.3d 105 (2d Cir. 2000)..................................................................................14

*Warth v. Seldin*,
    422 U.S. 490 (1975)................................................................................................8

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)..............................................................................................19

**STATUTES**

18 U.S.C. § 2702(a) ..................................................................................................................10

18 U.S.C. § 2702(a)(1) ..............................................................................................................11

18 U.S.C. § 2702(b) ..................................................................................................................11

18 U.S.C. § 2702(b)(1) ..............................................................................................................12

18 U.S.C. § 2702(b)(3) ..............................................................................................................12

28 U.S.C. § 2201(a) ..................................................................................................................16

Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 ..............................................................16

Stored Communications Act, 18 U.S.C. §§ 2701-2712 ..............................................................1

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(1) ..............................................................................1, 8

Federal Rule of Civil Procedure 12(b)(6) ..............................................................................1, 8

H.R. Rep. No. 99-647 (1986) ....................................................................................................12

U.S. Constitution art. III, § 2 ....................................................................................................17

Google Inc. ("Google") moves to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## I.      INTRODUCTION

Plaintiffs contend that Google's addition of "Google Buzz" to Gmail in 2010 violated the Stored Communications Act, 18 U.S.C. §§ 2701-2712.  As discussed in Google's simultaneously filed motion to dismiss or transfer for improper venue, this case repeats allegations and claims made in and adjudicated by the Northern District of California in a nationwide class action that has gone to judgment pursuant to a settlement.  While, and as described below, each of the three Plaintiffs in the instant action has a slightly different status under that settlement, *all* of the claims now asserted by Plaintiffs should be dismissed for failure to state a claim, lack of subject matter jurisdiction, or, in some instances, both.

## II.      BACKGROUND

### A.      The Parties

Google "provides various free web products to the public, including its widely used web-based email service, Gmail."  Compl. ¶ 9.  Google added Google Buzz to Gmail on February 9, 2010.  Compl. ¶ 12.  Google Buzz enabled Gmail users to share written posts, photos, hyperlinks, and other information with other Gmail users, who were referred to as "followers." Plaintiffs are Gmail users who contend that Google's addition of Google Buzz to Gmail violated the Stored Communications Act.  Compl. ¶¶ 2, 23 ("Plaintiffs each had a Gmail account at the time that Google Buzz was launched . . . ."), 46-75 (Complaint asserts Stored Communications Act violations based on addition of Google Buzz to Gmail).

**B.      Plaintiffs' Stored Communications Act Claims**

Plaintiffs' claims "arise under" the Stored Communications Act, Compl. ¶ 2, and are based on alleged privacy violations resulting from the addition of Google Buzz to Gmail, *see, e.g.*, Compl. ¶¶ 12, 54, 58, 61.  According to Plaintiffs, Google Buzz had "privacy consequences" for a Gmail user with a public Google profile.  Compl. ¶ 20.  A public Google profile is alleged to "enable[] [users] to make certain information about themselves public and to link to their content on Google product websites, such as the user's Google Reader shared items, public Picasa Web Albums, and Blogger blog.  Information on a person's public Google profile, which might include the person's name, location, and photo, was available on the Internet and can be indexed by search engines."  Compl. ¶ 11.

The alleged "privacy consequences" for Gmail users with the above-described public Google profiles amounted to the display of information in the following circumstances:

- **Google Profile Information.**  Plaintiffs allege that the contents of a Gmail user's public Google profile, which "potentially" might include the Gmail user's "occupation, place of residence, and contact info," became "visible to all persons who were 'following' the user."  Compl. ¶ 20.  Plaintiffs do not allege that Google Buzz changed any privacy settings or made Google profiles public.  On the contrary, Plaintiffs allege that Google profiles enabled the disclosure of public information, Compl. ¶ 11, and that "when first attempting to use Buzz," Gmail users were directed to create a "public Google profile," Compl. ¶ 16.  Plaintiffs do not contest that it was clear that the profile would be public: Plaintiffs themselves allege that Gmail users were prompted with a screen that "included the following language in prominent, contrasting type:  'Before

participating in Buzz, you need a public profile with your name and photo.  It's

visible on the web so friends can find and recognize you.'"  Compl. ¶ 16.

- **Follower Lists.**  Plaintiffs allege that lists of the persons "following" the Gmail

    user and the lists of the persons the Gmail user "followed" were displayed on the

    user's public Google profile.  Compl. ¶¶ 12, 20, 51, 54.  These "Follower Lists"

    were allegedly "automatically created" by Google Buzz.  Compl. ¶ 51.

- **Public Website Postings.**  Individuals might post "pictures, videos and text" on

    "public websites such as Picasa and YouTube."  Compl. ¶ 59.  Plaintiffs allege

    that these posts allegedly were "shar[ed] with the user's followers," Compl. ¶ 62,

    on the user's "public Google profile," Compl. ¶¶ 11, 16.  According to Plaintiffs,

    Google Buzz also "sent the collected information [Public Website Postings] to

    the user's 'followers.'"  Compl. ¶ 61.

Plaintiffs do not allege that they personally experienced any of the scenarios described

above.  Plaintiffs do not allege that they ever created public Google profiles or posted any

Google Profile Information, that Follower Lists ever were created for them, or that they ever

made any Public Website Postings.  Plaintiffs do not allege that the addition of Google Buzz to

Gmail resulted in any privacy impact whatsoever on any of them.  Plaintiffs merely assert that

they "each had a Gmail account at the time that Google Buzz was launched, and Plaintiffs, at and

around such time, used their Gmail accounts where they resided."  Compl. ¶ 23.

**C.    The 2010 Buzz Class Action**

Several purported class action lawsuits were filed after the launch of Google Buzz in

2010.  These ultimately were consolidated in a Consolidated and Amended Class Action

Complaint, purportedly brought on behalf of "the class of all Gmail users who reside in the

United States and to whose accounts Google added the Buzz social networking application."

Consolidated Amended Complaint ¶ 40, In re Google Buzz Privacy Litig., No. CV-10-00672-JW, Dkt. No. 31 (N.D. Cal. July 29, 2010) (the "Buzz Class Action Complaint") (Decl. of Susan Fahringer in Supp. of Def. Google Inc.'s Mot. to Dismiss for Failure to State a Claim and Lack of Subject Matter Jurisdiction ("Fahringer Decl."),[1] Ex. A).  Plaintiffs here, who "each had a Gmail account at the time that Google Buzz was launched," Compl. ¶ 23, are therefore among the members of the class asserted and eventually certified for settlement purposes (the "Buzz Class") in the Buzz Class Action.

A nationwide settlement of the Buzz Class Action was entered into on September 2, 2010.  See Exhibit 1 in Support of Notice and Motion for Order (1) Preliminarily Approving Class Action Settlement; (2) Provisionally Certifying Settlement Class and Appointing Class Action Counsel; (3) Authorizing Distribution of Notice of Settlement; and (4) Setting a Schedule for the Final Approval Process; Memorandum and Points of Authorities, In re Google Buzz Privacy Litig., No. CV-10-00672-JW, Dkt. No. 41 (N.D. Cal. Sept. 3, 2010) (the "Settlement Agreement") (Fahringer Decl., Ex. B).  The Settlement Agreement described the parties' proposed notice plan and included it as an exhibit, subject to court approval.  Settlement Agreement ¶ 8.3 & Ex. B.  The United States District Court for the Northern District of California preliminarily approved the Settlement Agreement and the proposed plan for providing notice of the same on October 7, 2010.  Second Amended Order Preliminarily Approving Class Action Settlement ¶ 1, In re Google Buzz Privacy Litig., No. CV-10-00672-JW, Dkt. No. 50 (N.D. Cal. Oct. 7, 2010) ("Preliminary Approval Order") (Fahringer Decl., Ex. C).  The Preliminary Approval Order described how notice and opt-outs were to be implemented.  Preliminary Approval Order ¶¶ 6-8.

---

[1] All documents previously filed in the Buzz Class Action and referenced herein are attached for the Court's convenience to the Declaration of Susan Fahringer in Support of Defendant Google Inc.'s Motion to Dismiss for Failure to State a Claim and Lack of Subject Matter Jurisdiction.

The notice was implemented as set forth in the Preliminary Approval Order. *See* Affidavit of Jennifer M. Keough in Supp. of Pls.' Mot. for Final Approval of Class Action Settlement ¶ 3, In re Google Buzz Privacy Litig., No. CV-10-00672-JW, Dkt. No. 63 (N.D. Cal. Dec. 20, 2010) ("Keough Decl.") (Fahringer Decl., Ex. D). Putative class members had the opportunity to opt out, and 578 did so in a timely manner, including Rudgazyer. *Id.* ¶ 7 & Ex. A; *see also* Amended Order Granting Final Approval of Class Action Settlement; Approval of *Cy Pres* Awards; and Awarding Attorney Fees ¶¶ 10, 12, 18, In re Google Buzz Privacy Litig., No. CV-10-00672-JW, Dkt. No. 129 (N.D. Cal. June 2, 2011) ("Final Approval Order") (Fahringer Decl., Ex. E); Compl. ¶ 32. Amalfitano attempted to opt out, but he failed to follow the instructions in the Preliminary Approval Order and the court-approved notice, and as a result, his opt-out request was rejected. Compl. ¶¶ 25-27, 29-30; Preliminary Approval Order ¶ 8 (requiring opt-outs to be received by December 6, 2010); Keough Decl. ¶ 7 & Ex. B (Amalfitano opt out untimely); Final Approval Order ¶¶ 10 (approving notice), 12 (sufficient opportunity to opt out), 18 (approving of list of opt outs submitted by class action administrator; Amalfitano opt out not accepted). Ganci did not even attempt to opt out. Compl. ¶ 30.

Putative class members also had the opportunity to object to the settlement. Preliminary Approval Order ¶¶ 9, 13. None of the Plaintiffs in the instant action submitted any objection to the settlement of the Buzz Class Action. Counsel for Plaintiffs, Todd Bank, however, represented Tanya Rudgayzer as an objector to the Settlement Agreement. In connection with that objection, Bank raised the very arguments that he now makes on behalf of Amalfitano and Ganci. *See* Mem. of P. & A., In re Google Buzz Privacy Litig., No. CV-10-00672-JW, Dkt. No. 80 (N.D. Cal. Jan. 10, 2011) (brief in support of putative class member Tanya Rudgayzer's

objection to proposed Settlement Agreement on the grounds that court-approved notice was

inconsistent with Settlement Agreement) (Fahringer Decl., Ex. F).

The Final Approval Order was entered on June 2, 2011. The Final Approval Order

approved the notice as implemented and found that it satisfied due process requirements, stating:

> The parties have provided notice in a manner consistent with the
> Order granting the parties' Motion for Preliminary Approval of
> Class Action Settlement and as set forth in the Settlement
> Agreement. The notice, as implemented, met the requirements of
> due process and was the best notice practicable under the
> circumstances. The notice was reasonably calculated, under the
> circumstances, to apprise members of the Settlement Class of the
> pendency of the action, the terms of the Settlement, and their right
> to appear, object to, or exclude themselves from the Settlement.
> Further, the notice was reasonable and constituted due, adequate,
> and sufficient notice to all persons entitled to receive notice.

Final Approval Order ¶ 10. The court considered and rejected the arguments raised by counsel

Bank on behalf of Ms. Rudgayzer regarding alleged discrepancies between the Settlement

Agreement and the notice as implemented. Final Approval Order ¶ 12. The court dismissed the

case with prejudice and ordered the release of all claims of the Buzz Class. Final Approval

Order ¶ 17; Settlement Agreement ¶ 9 ("Upon entry of the Final Order and Judgment, and

regardless of whether any Class Member executes and delivers a written release, each Releasing

Party shall be deemed to release and forever discharge Google from all Settled Claims.").

Thus, long before the instant suit was filed, the Buzz Class Action was dismissed with

prejudice and all claims of class members, including their Stored Communications Act claim,

released.

**D.    Declaratory Judgment Claims Asserted by Amalfitano and Ganci**

In an attempt to avoid the dismissal with prejudice of their claims by the Final Approval

Order and the release of their claims in the Settlement Agreement, Amalfitano and Ganci now

seek to be deemed to have opted out of the Buzz Class. Amalfitano and Ganci both admit that

they failed to follow opt-out instructions on the court-approved notice (which were also stated in the Preliminary Approval Order at ¶ 8).  To justify their request to be deemed to have opted out, Amalfitano and Ganci contend that the Court should disregard the notice instructions, Preliminary Approval Order, and Final Approval Order, on the grounds that the court-approved notice instructions allegedly were inconsistent with the Settlement Agreement.  Compl. ¶¶ 76-79. Amalfitano and Ganci style these collateral attacks as claims for declaratory judgment. *Id.*

Amalfitano and Ganci allege that the notice instructions included three requirements not found in the Settlement Agreement:  (1) that opt-out requests be received (rather than postmarked) by December 6, 2010; (2) that opt-out requests include "the reason or reasons for opting out of the settlement"; and (3) that opt-out requests show the requestor had a Gmail account after Google Buzz launched.  Compl. ¶¶ 25-27.  These requirements were, however, either specifically set forth in the Preliminary Approval Order or attached to and incorporated in the Settlement Agreement itself as an exhibit.  Preliminary Approval Order ¶ 8 (notice must be received by December 6 and include the reasons for opting out); Settlement Agreement Ex. B (form of notice instructions indicating opt-out requests must show requestor had a Gmail account after Google Buzz launched).

## E.    Purported Class Definitions

Rudgayzer seeks to represent a class of all persons who opted out of the Buzz Class Action.  Compl. ¶ 1.  Amalfitano seeks to represent a class of all Buzz Class members who failed to follow the opt-out instructions in the court-approved notice and Preliminary Approval Order, but did follow some instructions in the Settlement Agreement. *Id.*  Ganci seeks to represent a class of all Buzz Class members who did not try to opt out, but would have, had they known of the alleged inconsistencies between the court-approved notice and the Settlement Agreement. *Id.*

## III.   ARGUMENT

As set forth below, the Complaint must be dismissed under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  A complaint must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "if the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not contain factual allegations sufficient "to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), which occurs when it does not "state a claim for relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kiobel v. Royal Dutch Petroleum*, 621 F.3d 111, 191 (2d Cir. 2010).

**A.    Plaintiffs' Stored Communications Act Claims Must Be Dismissed for Lack of Standing and Failure to State a Claim**

**1.    Plaintiffs Lack Article III Standing**

In Article III, the U.S. Constitution sets a "hard floor of . . . jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).  The first requirement of this "irreducible constitutional minimum" is "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Defenders of Wildlife v. Lujan*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted).  And while injury "may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .' [a] plaintiff still must allege a distinct and palpable injury to himself." *Warth v. Seldin*, 422 U.S. 490, 500-01 (1975) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973)); *see also Low v. LinkedIn Corp.*, __ F. Supp. 2d __, No. 11-CV-01468-LHK, 2012 WL 2873847, at *6 (N.D. Cal. July 12, 2012) (holding that even under the Stored Communications Act, injury must be particularized).

An injury in *law*, even if properly alleged, cannot satisfy the constitutional requirement that Plaintiffs must have suffered an injury in *fact*. *See Gladstone Realtors v. Village of Bell-wood*, 441 U.S. 91, 100 (1979) (holding that while Congress may expand standing by legislation to the full extent permitted by Article III, "in no event . . . may Congress abrogate the Art. III minima: A plaintiff must always have suffered 'a distinct and palpable injury to himself' that is likely to be redressed if the requested relief is granted") (internal citations omitted).

Plaintiffs fail to allege any concrete, particularized, actual, or imminent injury in fact. Indeed, Plaintiffs plead no facts showing that anything at all happened to any of them as the result of the addition of Google Buzz to Gmail. Plaintiffs hypothesize that Gmail users might have been harmed by the disclosure of Google Profile Information, Follower Lists, or Public Website Postings, but they do not allege that they themselves were. *See, e.g.*, Compl. ¶ 55 (discusses information that might be contained on a hypothetical Google profile, without alleging that any Plaintiff created one), ¶¶ 12, 51 (generically discusses the creation of "followers" lists without alleging that any such list was created for any of the Plaintiffs), ¶¶ 59, 62 (generally describes the potential posting of photos and video on public websites without alleging that any of the Plaintiffs did so, or that if they did that any such postings were disclosed as the result of Google Buzz). Plaintiffs do not allege that they themselves were impacted by Google Buzz in any way at all, positive or negative.[2]

Courts routinely dismiss similarly deficient Stored Communications Act claims for lack of standing. *See, e.g., Low v. LinkedIn Corp.*, No. 11-CV-01468-LHK, 2011 WL 5509848, at *6

---

[2] Indeed, there has been no showing, ever, that any Gmail user suffered any damage as the result of the addition of Google Buzz to Gmail. Even the plaintiffs in the Buzz Class Action conceded as much: "Class Counsel identified no instances in which a class member alleged they had suffered out-of-pocket damages due to Buzz's release." *See* Notice of Motion; Class Counsel's Application for Attorneys' Fees and Reimbursement of Expenses at 4, 11, 20-21, In re Google Buzz Privacy Litig., No. CV-10-00672-JW, Dkt. No. 65 (N.D. Cal. Dec. 20, 2010) (Fahringer Decl., Ex. G).

(N.D. Cal. Nov. 11, 2011) (dismissing complaint because plaintiffs did not allege that their own

information was disclosed to third parties); *Gaos v. Google*, No. C 10-04809 JW, 2011 WL

7295480, at *3 (N.D. Cal. Apr. 7, 2011) (dismissing complaint for lack of standing, noting that

"Plaintiff's conclusory allegations of disclosures of communications resulting in unspecified

harm in violation of the ECPA, not supported by any facts, are insufficient to allege violation of

Plaintiff's statutory rights").  And as Rudgayzer himself is aware, courts have held in other

contexts that mere disclosure of information, absent more, is insufficient to show actual harm.

*See Rudgayzer v. Yahoo!, Inc.*, No. 5:12-CV-01399 EJD, 2012 WL 5471149, at *6 (N.D. Cal.

Nov. 9, 2012) (dismissing breach of contract claim brought by the same Albert Rudgayzer who

is Plaintiff here, and stating that, "[m]ere disclosure of [private] information in and of itself,

without a showing of actual harm, is insufficient"); *see also In re iPhone Application Litig.*, No.

11-MD-02250-LHK, 2011 WL 4403963, at *4 (N.D. Cal. Sept. 20, 2011) (dismissing complaint

for lack of standing because "Plaintiffs do not allege injury in fact to themselves") (emphasis

added).

      The Stored Communications Act does not permit Plaintiffs to seek to recover for

something that might have happened to somebody else.  Plaintiffs' failure to allege a concrete,

particularized injury is fatal to their Stored Communications Act claim.  All of Plaintiffs' claims

"arise[] under" the Stored Communications Act.  Compl. ¶ 2.  Accordingly, the Court should

dismiss the Complaint for lack of standing.

### 2.    Plaintiffs Fail to State a Claim Under the Stored Communications Act As to Alleged Disclosure of Publicly Available Information

      Plaintiffs allege that Google disclosed the following three types of information in

violation of § 2702(a) of the Stored Communications Act:  Google Profile Information, Follower

Lists, and Public Website Postings.  *See supra* Part II.B.; Compl. ¶¶ 55 (Google Profile

Information), 12, 51, 54 (Follower Lists), 59, 62 (Public Website Postings).  Plaintiffs do not allege that they experienced these scenarios, but even if they did, to the extent Plaintiffs' claims assert disclosure of public information, they fail to state a claim.  The disclosure of information that is already public is not actionable under the Stored Communications Act.  18 U.S.C. § 2702(a)(1).

Plaintiffs concede that a Google Profile is public:  Plaintiffs allege that it allows one "to make certain information about themselves public," allege that the information on a Google profile, including a "person's name, location, and photo," was "available on the Internet and c[ould] be indexed by search engines," and acknowledge that a Gmail user had to create a "public Google profile" before using Google Buzz.  Compl. ¶¶ 11, 16.  There could be no mistake that the profile at issue was public; as Plaintiffs themselves allege, the profile-creation screen "included the following language in prominent, contrasting type:  'Before participating in Buzz, you need a public profile with your name and photo.  It's visible on the web so friends can find and recognize you.'"  Compl. ¶ 16.  Plaintiffs also allege that the Public Website Postings, including "pictures, videos, and text," that allegedly were disclosed to followers had been posted on "public websites" in the first instance.  *See, e.g.*, Compl. ¶¶ 16, 59.  In other words, Plaintiffs allege that Google disclosed to a Gmail user's followers, information that the Gmail user himself or herself already had made public.

This does not state a Stored Communications Act violation.  The Stored Communications Act does not prohibit a provider from directing members of the public to specific pieces of information that are already publicly available and viewable by anyone on the Internet.  Section 2702(b) of the Stored Communications Act sets forth exceptions from liability, permitting the disclosure of content "to an addressee or intended recipient," or, alternatively,

"with the lawful consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of remote computing service." 18 U.S.C. § 2702(b)(1), (3). Both exceptions apply to Google Profile Information and Public Website Postings. First, the disclosures were made to the intended recipient—the public. Second, as the legislative history of the Stored Communications Act makes clear, when a user posts information on a public website, he or she has consented to its disclosure. *See* H.R. Rep. No. 99-647, at 66 (1986) ("[A] subscriber who places a communication on a computer 'electronic bulletin board,' with a reasonable basis for knowing that such communications are freely made available to the public, should be considered to have given consent to the disclosure or use of the communication."). Accordingly, Plaintiffs cannot state a claim under the Stored Communications Act based on the disclosure of any information that was already publicly available, including Google Profile Information or Public Website Postings.

**B.      Amalfitano and Ganci's Claims Are Barred by Res Judicata**

The Stored Communications Act claims of Amalfitano and Ganci, and the classes they seek to represent, fail for the reasons discussed above. But further, *all* claims of Amalfitano and Ganci and their classes are barred by res judicata and should be dismissed on that ground.

Amalfitano and Ganci are by their own admission part of the Buzz Class and were parties to the Settlement Agreement. Compl. ¶ 23 (Amalfitano and Ganci were Gmail users when Google Buzz launched); Buzz Class Action Complaint ¶ 40 (Buzz Class includes Gmail users when Google Buzz launched). *All* their claims regarding Google Buzz, however denominated, are therefore released and were dismissed with prejudice by the Northern District of California. The claims they now assert, both individually and purportedly on behalf of classes, blatantly seek a "do over" in violation of long-established principles of res judicata, and the claims therefore should be dismissed. *See Overview Books, LLC v. United States*, 755 F. Supp. 2d 409, 420

(E.D.N.Y. 2010) ("Since defendants have adequately demonstrated the presence of all four requirements necessary for a finding of *res judicata*, their motion to dismiss the complaint pursuant to Rule 12(b)(6) must be granted."), *aff'd*, 438 F. App'x 31 (2d Cir. 2011).

### 1.    Legal Standard for Res Judicata

Res judicata bars a party from raising claims that were already decided or could have been decided in prior litigation, serving the "vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981). Res judicata serves the important public policy of providing "an end to litigation" and ensures that "matters once tried shall be considered forever settled as between the parties." *Id.* at 401, 402 (internal quotation marks and citation omitted). The Second Circuit describes res judicata as a "rule of fundamental repose important for both the litigants and for society." *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (internal quotation marks and citation omitted).

Res judicata applies when there is a final judgment on the merits, between the same parties or privies, regarding a claim that was actually raised or could have been raised in a prior action. *Moitie*, 452 U.S. at 398; *see also Esquire Trade & Fin., Inc. v. CBQ, Inc.*, 562 F.3d 516, 520 (2d Cir. 2009) (holding that res judicata "bars later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action") (internal quotation marks and citation omitted). It is not necessary for the "precluded claim to actually have been litigated; [the] concern, rather, is that the party against whom the doctrine is asserted had a full and fair opportunity to litigate the claim." *EDP Med. Computer Sys.*, 480 F.3d at 626. To assess whether a party had a "full and fair opportunity to litigate," the second suit must have the same

claim or the same "nucleus of operative facts" as the first suit.  *See Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000).

### 2.      The Elements of Res Judicata Are Met for Amalfitano's and Ganci's Claims

In this case, all four requirements are met.  First, the Final Approval Order issued by the Northern District of California constitutes a final judgment on the merits that binds all class members to the terms of the Settlement Agreement.  *See Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ("[A] judgment in a properly entertained class action is binding on class members in any subsequent litigation."); *Gonzalez v. City of New York*, 396 F. Supp. 2d 411, 415 (S.D.N.Y. 2005) ("[T]he LOA Class Action was a final judgment on the merits.  The LOA Class Action court ordered that the 'individual and class claims raised in the Second Amended Complaint (except the individual claims of the five named plaintiffs who have timely opted out of the settlement) are dismissed with prejudice. . . .  Accordingly, the order issued by the court approving the Settlement Agreement and dismissing the LOA Class Action qualifies as a final judgment on the merits as regards the claims there resolved.'") (citations omitted); *see also Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002) ("[I]t is clear that a dismissal, with prejudice, arising out of a settlement agreement[,] operates as a final judgment for res judicata purposes.").

Second, the Northern District of California possessed subject matter and personal jurisdiction over all class members, which includes Amalfitano and Ganci.  Final Approval Order ¶ 3.  As Amalfitano and Ganci assert that the Court has subject matter jurisdiction over their claims, Compl. ¶ 23, they could hardly attempt to argue that the prior federal court did not.

Third, Amalfitano and Ganci were members of the Buzz Class.  Compl. ¶ 23.  Neither successfully opted out of the Buzz Class.  The Northern District of California approved the notice given to the Buzz Class both as proposed and as implemented, finding that the notice

satisfied due process requirements.  Final Approval Order ¶ 10.  Consequently, both Amalfitano

and Ganci were class members bound by the prior Settlement Agreement.  *See Gates v. United*

*Health Grp. Inc.*, No. 11 Civ. 3487(KBF), 2012 WL 2953050, at *14 (S.D.N.Y. July 16, 2012)

(barring new cause of action asserted by plaintiff who was previously a member of class

settlement that released all causes of action by members of the class); *Gonzalez*, 396 F. Supp. 2d

at 416 ("An individual is a member of a class certified pursuant to Rule 23(b)(3) if plaintiffs

follow proper notice procedures and the putative member did not opt out.").

Fourth, this suit asserts the same cause of action.  The Second Circuit examines three

factors in this determination:  "(1) whether the underlying facts are 'related in time, space, origin,

or motivation;' (2) whether the underlying facts 'form a convenient trial unit;' and (3) whether

their 'treatment as a unit conforms to the parties' expectations.'"  *Channer v. Dep't of Homeland*

*Sec.*, 527 F.3d 275, 280 (2d Cir. 2008) (citations omitted).  As described above, the Buzz Class

Action Complaint included the same Stored Communications Act allegations Amalfitano and

Ganci make here, and they were based on the same set of facts.  And Amalfitano's and Ganci's

claims seeking declaratory judgments regarding their opt-out status on account of alleged

inconsistencies in the notice provided in the Buzz Class Action depend on facts and issues that

were put before the Northern District of California and decided by that court in the process of

approving the settlement, and they thus rely on a "transaction" or nucleus of facts, here regarding

notice, that was at issue in the original Buzz Class Action.  *See Computer Assocs. Int'l, Inc. v.*

*Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997) (holding that res judicata bars a second suit if a

nucleus of fact existed at the time of the first suit, even if the facts were not necessary to the first

suit); Preliminary Approval Order ¶ 6; Final Approval Order ¶¶ 10 ("The notice, as

implemented, met the requirements of due process and was the best notice practicable under the

circumstances."), 12 ("The Court has determined that full opportunity has been given to the members of the Settlement Class to opt out of the Settlement . . . .").

Amalfitano and Ganci had a full and fair opportunity to challenge the notice provided to them in the Buzz Class Action. To the extent they wanted to challenge the notice, that challenge should have occurred through appellate review, not through a collateral attack two years later in a different federal district court. *See, e.g.*, *Rollock v. LaBarbera*, 2009 WL 8732294, at *1 (S.D.N.Y. June 23, 2009) ("The [prior *Rollock* decision in the Eastern District of Kentucky] determined the merits of the original claim the plaintiff seeks to litigate here and plaintiff may not relitigate that claim in this forum simply because he is dissatisfied with the outcome."), *aff'd*, 383 F. App'x 29 (2d Cir. 2010). Amalfitano's and Ganci's claims are barred by res judicata and should be dismissed.

**C.    In the Alternative, the Court Lacks Subject Matter Jurisdiction over Amalfitano and Ganci's Claims Seeking Declaratory Judgments Because the Requirements for the Assertion of Federal Court Jurisdiction to Issue a Declaratory Judgment Are Not Met**

In addition to res judicata, adjudication of Amalfitano's and Ganci's claims for declaratory judgment is also barred because the requirements for issuance of a declaratory judgment are not met, and even if the Court had the constitutional and statutory power to entertain the claims, it should exercise its discretion not to do so.

**1.    Legal Standard for Issuance of a Declaratory Judgment**

The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, grants federal district courts the discretion to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a); *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir.), *cert. denied*, 133 S. Ct. 423 (2012). But this power does not create any substantive rights, nor does it create an independent cause of action; instead, a declaratory judgment can only be sought when

there is an underlying "valid legal predicate." *Chevron Corp.*, 667 F.3d at 244.   In other words, the Declaratory Judgment Act does not create legal rights where those rights do not otherwise exist. *Id.* at 245.   This is a matter both of the terms of the statute itself and also, more fundamentally, is necessary because the "essential prerequisite[ ]" to declaratory relief is a "'case or controversy' within Article III of the Constitution." *Maryland Cas. Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971); U.S. Const. art. III, § 2.   Further, even when a federal court has the constitutional and statutory ability to issue a declaratory judgment, doing so is discretionary. *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) ("The Declaratory Judgment Act was an authorization, not a command.   It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.").

### 2.   The Court Lacks Jurisdiction to Issue a Declaratory Judgment Because There Is No Underlying Legal Claim or Rights to Be Adjudicated

The Court has no power to entertain Amalfitano's and Ganci's requests for declaratory judgment because the declarations they seek do not relate to any underlying legal claims or rights that need adjudication.

Amalfitano and Ganci did not opt out of the Buzz Class Action.   While Amalfitano tried, he did not follow the deadline set by the Court and thus his opt out was rejected.   Thus, their status as members of the Buzz Class is resolved.   In their purported claims for declaratory judgment, they seek to have the Court issue a judgment "that their opt-out requests are valid," Compl. ¶ 77 (Amalfitano), or "that they are not bound by the Google Buzz Settlement Agreement," Compl. ¶ 79 (Ganci).   Thus, they are not asking for the Court to decide an issue of legal rights as between them and Google.   Instead, they are asking for the Court to declare that the Northern District of California was wrong in its prior rulings.   Given that it is entirely unclear how such a judgment by this Court could have any actual effect or import as the Northern

-17-

District's judgment remains in effect, such a statement would be an "abstract or academic determination[]" that is quintessentially *not* what the Declaratory Judgment Act allows. *Maryland Cas. Co.*, 445 F.2d at 1014 (reversing district court's issuance of declaratory judgment and remanding with directions to dismiss the complaint when the declaratory judgment issued had no actual legal impact and was "not . . . determinative or even relevant" to the legal status of the parties).

The Second Circuit's *Chevron Corp.* case is instructive.  Residents of Ecuador obtained a judgment in a court in Ecuador against Chevron regarding environmental issues.  667 F.3d at 236.  In federal court in New York, Chevron preemptively sought to enjoin any enforcement of that judgment outside Ecuador, and the district court granted an injunction.  *Id.* at 238.  The Second Circuit reversed with instructions to dismiss the case in its entirety.  *Id.* at 247.  It held that a statute that provided a cause of action to a judgment creditor to obtain recognition of and enforce a foreign judgment provided no cause of action or right to relief by Chevron, the judgment debtor.  *Id.* at 241.  It then rejected Chevron's attempt to solve its lack of a cause of action by "attempting to characterize its far-reaching claims as a simple declaratory judgment action."  *Id.* at 244.  Because Chevron simply had no cause of action, the Declaratory Judgment Act was no help to it, because the act "does not extend to the declaration of rights that do not exist under law."  *Id.*

> **3.     Even if the Court Had Power to Consider the Declaratory Judgment Claims, in Its Discretion It Should Decline to Do So to Avoid Entering an Inconsistent Judgment and Encroaching on the Rulings of the Northern District of California**

Even when the Court has the bare power to consider a claim for declaratory judgment, it must in addition consider whether declaratory relief would be an appropriate exercise of judicial power.  "[D]istrict courts possess discretion in determining whether and when to entertain an

action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).  The Supreme Court has emphasized that the statute itself makes a "textual commitment to discretion" and imparts a "breadth of leeway" that "distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface." *Id.* at 286-87.

The Supreme Court instructs district courts, in exercising this discretion, to be "informed by the[ir] teachings and experience concerning the functions and extent of federal judicial power." *Id.* at 287 (internal quotation marks and citation omitted).  The Second Circuit states the following factors should be considered: "'[1] whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; . . . [2] whether a judgment would finalize the controversy and offer relief from uncertainty[;] . . . [3] whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'; [4] whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and [5] whether there is a better or more effective remedy'." *New York v. Solvent Chem. Co*, 664 F.3d 22, 26 (2d Cir. 2011) (quoting *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003)).

Here, all these factors counsel the Court to exercise its discretion not to entertain Amalfitano's and Ganci's claims for declaratory relief.  The declaratory judgment sought will serve no useful purpose in clarifying legal issues, because the Northern District of California has already issued a final order resolving the very same issues.  The declaratory judgment sought will not finalize a controversy and offer relief from uncertainty, because Amalfitano's and Ganci's opt-out status already is finalized.  To the contrary, allowing these claims to proceed would *create* uncertainty and lack of finality where none currently exists, as it would suggest that

a federal court order ending a nationwide class action is not final and can be attacked again at the whim of any class member. The effort here is certainly "procedural fencing" and will "increase friction" between two coordinate courts, as Amalfitano and Ganci are trying to have the Court undo what the Northern District of California has already done. Finally, Amalfitano and Ganci had a better and more effective remedy—they could have opted out properly, or at the least they could have objected to the Settlement Agreement and then appealed—and the Declaratory Judgment Act should not be used as a fallback do-over remedy by litigants who chose not to use remedies available to them.

## IV.    CONCLUSION

For the reasons discussed above, Google respectfully requests that the Court dismiss Plaintiffs' claims. Because Plaintiffs cannot cure the flaws described above by amending the Complaint, the Court should dismiss the Complaint with prejudice.

Dated February 19, 2013

Respectfully submitted,

PERKINS COIE LLP

By: _____

Dennis Hopkins (DH-3767)
DHopkins@perkinscoie.com
30 Rockefeller Plaza, 22nd Floor
New York, New York 10112-0015
212.262.6900

Susan Fahringer (SF-6368)
SFahringer@perkinscoie.com
Rebecca Engrav (RE-0824)
REngrav@perkinscoie.com
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
206.359.8000
Attorneys for Defendant
Google Inc.